**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Clarence Kenneth Voigt, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06-cv-045 |
| | ) | |
| Al Wahl, Allen C. Hoberg, and the State of North Dakota, | ) ) ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) | |

Before the Court is the Defendants' motion for summary judgment. The Plaintiff resists the motion. For the reasons set forth below, the Defendants' motion for summary judgment will be granted.

**I.    BACKGROUND**

The Plaintiff, Clarence Voigt, who is acting pro se in this matter, alleges violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq. The complaint arises out of an appeal by Voigt of the denial of his application for Workforce Safety and Insurance (WSI) benefits. Voigt had claimed a job related neck injury. Voigt appealed the initial denial by WSI which was issued May 20, 2004. A hearing was scheduled by the Office of Administrative Hearings (OAH) before Administrative Law Judge Al Wahl. The OAH is an independent executive agency of North Dakota government charged with conducting administrative hearings on behalf of state agencies. Allen Hoberg is the director of the OAH.

A pre-hearing conference was held on October 7, 2004. The conference was held in person in a small OAH conference room. In attendance were Voigt, ALJ Wahl, Voigt's former

employer, and counsel for WSI, Lawrence A. Dopson. A second pre-hearing conference was held on November 15, 2004. Again, Voigt, ALJ Wahl, Voigt's former employer, and Dopson attended and participated in the hearing. After a request by Voigt for additional time, a hearing date was set for February 2, 2006.

On or about December 23, 2004, ALJ Wahl received a letter from Voigt stating that his hearing was very poor and requesting "some kind of auxiliary aids" for the February 2, 2005, hearing. Voigt did not elaborate in his letter as to what type of auxiliary aids he was requesting but at his deposition stated he wanted a "speaker microphone or microphone or headset for hearing better," "like the courts have." Voigt had not requested "auxiliary aids" or noted his poor hearing at the two pre-hearing conferences that were held. ALJ Wahl responded by letter dated December 27, 2004. ALJ rejected Voigt's request stating "the Office of Administrative Hearings does not provide assistive devices for hearing impairment (or for that matter, any other impairment)." ALJ Wahl also noted in the letter that he had not noticed and Voigt had not complained about having any difficulty participating in the two pre-hearing conferences that had been held.

OAH hearing notices advise individuals with disabilities that the OAH will accommodate the use of any assistive devices so that they may fully participate in the hearing. Voigt made his request after reading the ADA language on the OAH hearing notice.

A third pre-hearing conference was held on January 24, 2005. No request for hearing assistance was made in regard to this hearing. Voigt attended and participated along with ALJ Wahl and Dopson.

The appeals hearing was held as scheduled on February 2, 2005. Voigt did not make any

further requests for hearing assistance or any complaint that he could not hear.  The hearing was held in the same manner as the three pre-hearing conferences in a 14X15 foot hearing room at the OAH offices with the attendees sitting around three conference table arranged in a T formation.  Ambient noise was minimal.  The hearing last approximately 2 ½ hours.  On two occasion during this hearing Voigt asked that a question be repeated..  This occurred during Dobson's cross-examination of Voigt.  At the close of this cross-examination Voigt was given the opportunity to add to his testimony but stated "No.  I perfectly understand what he has said to me and I don't have any further questions."

   Voigt's appeal of the denial of WSI benefits was denied by ALJ Wahl sometime after the February 2, 2005, hearing.  An appeal was taken to the State District Court which affirmed ALJ Wahl's decision in an order dated August 5, 2005.  Voigt commenced this action May 25, 2005, alleging violation of the ADA for not being afforded auxiliary aids at the February 2, 2005, OAH hearing.

   Voigt was 61 years old at the time of the OAH hearing.  Medical records demonstrate Voigt has moderate hearing loss.  He was fitted with hearing aids in 1996.  He did not wear his hearing aids at the OAH hearing.  He also did not wear a hearing aid when his deposition was taken in this case.  Voigt states his hearing aids no longer work and he cannot afford to replace them.  According to his doctor, Voigt can be expected to experience considerable difficulty understanding conversational levels of speech if he does not use hearing aids and if he does use hearing aids Voigt can expect his ability to hear and understand speech to significantly improve.

   Voigt claims that because he was denied auxiliary aids at the OAH hearing he may have missed something in the testimony that caused him to lose the appeal.  The complaint seeks

$100,000 in economic damages, $300,000 in non-economic damages and that the State of North Dakota come into compliance with the ADA within six months or that Voigt be awarded another $500,000 in damages.

## II.     STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. DISCUSSION

#### A. Eleventh Amendment Immunity

The Defendant argues it enjoys Eleventh Amendment immunity from suit under the ADA. Although the Eleventh Amendment generally renders States immune from suit, Congress has the authority pursuant to the Fourteenth Amendment to abrogate that immunity. Congress specifically did so in enacting the ADA. 42 U.S.C. § 12202. The United States Supreme Court recently validated the ADA's abrogation of States' Eleventh Amendment immunity from suit in the context of Title II and access to courts. See Tennessee v. Lane, 541 U.S. 509, 533-34 (2004).

In Lane, the Supreme Court held that "unequal treatment of disabled persons in the administration of judicial services has a long history," and that Title II's requirement of reasonable accommodations for eligible recipients of public services was a "reasonable prophylactic measure, reasonably targeted to a legitimate end." Id. at 532-33. Additionally, Title II's enforcement provision authorizes private citizens to bring suits for money damages, by incorporating § 505 of the Rehabilitation Act of 1973. Id. at 517; see also 42 U.S.C. § 12133. Thus, although the Eighth Circuit has previously held that Title II of the ADA was not a valid abrogation of Eleventh Amendment immunity, see e.g., Alsbrook v. City of Maumelle, 184 F.3d 999, 1007 (8th Cir. 1999), the Supreme Court decision in Lane demonstrates that States sovereign immunity has been abrogated by Title II of the ADA in the context of access to court cases. Lane, 541 U.S. at 534. Voigt's claim arises in the context of a request for accommodation at a hearing before an ALJ on an appeal of the denial of WSI benefits. The hearing was adversarial in nature and the decision of the ALJ was appealed to the State District Court. As such, the case is properly characterized as involving access to judicial or court

services.  The Court concludes Voigt's claim is not barred by Eleventh Amendment immunity.

### B. Rooker-Feldman

The Defendants argue that Voigt's claim is barred by the Rooker-Feldman doctrine.  The Eight Circuit has described the doctrine as follows:

> The Rooker-Feldman doctrine is named after two Supreme Court cases--Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  Rooker held that federal district courts have no appellate jurisdiction over state courts--the United States Supreme Court is the only federal court with such power. 263 U.S. at 416, 44 S.Ct. 149.  The Supreme Court went on to explain in Feldman that federal district courts may not exercise jurisdiction over issues that are "inextricably intertwined" with a prior state court judgment. 460 U.S. at 482 n. 16, 486, 103 S.Ct. 1303.  A federal claim is inextricably intertwined with a state court judgment when "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir.1997); see Keene Corp. v. Cass, 908 F.2d 293, 296-97 (8th Cir.1990).

Canal Capital Corp. v. Valley Pride Pack, Inc.,

Voigt stated at his deposition that he might have missed something at the OAH hearing which caused him to lose his appeal of the denial of WSI benefits.  The State District Court affirmed the denial of benefits.  The Court agrees that Voigt's damages relating directly to his claimed lost benefits are barred by the Rooker-Feldman doctrine.  However, compensatory damages are available under the ADA as well and Voigt is requesting damages far in excess of lost WSI benefits. Matthews v. Jefferson, 29 F.Supp.2d 525, 535 (W.D.Ark. 1998).  Whether Voigt has suffered discrimination at his OAH hearing is an issue wholly separate from the denial of WSI benefits.  The Court will not review the validity of that decision in any way.  The Court does have jurisdiction over Voigt's ADA claim and those damages not directly related to the claimed lost WSI benefits.

### C. Defendants Wahl and Hoberg

It is unclear from the complaint whether Voigt intended to sue Wahl and Hoberg in their individual or official capacity. The Eighth Circuit has held that individuals may not be sued in their individual capacities directly under the provisions of Title II of the ADA. Alsbrook, 184 F.3d at 1005 n.8. Because Wahl[1] and Hoberg can only be sued in their official capacity, the Court will treat the complaint as a suit against Wahl and Hoberg in their official capacities only. Filing a suit against a government official in his official capacity is tantamount to a lawsuit against the state. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Naming Wahl and Hoberg along with the State of North Dakota amounts to nothing more than redundant pleading.

### D. ADA

Title II of the ADA applies to discrimination in public services. 42 U.S.C. §§ 12131-12165. The relevant portion of Title II state as follows: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. In order to establish a violation of Title II of the ADA a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and (3) that such exclusion, denial of benefits or other discrimination was by reason of his disability. Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999); Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998).

---

[1] Wahl would likely be entitled to judicial immunity as well had Voigt sued him in his individual capacity. The United States Supreme Court has concluded that an ALJ's duties are "'functionally comparable to that of a judge" and thus an ALJ, like any other judge, is entitled to absolute immunity from damages liability for his or her judicial acts. Butz v. Economou, 438 U.S. 478, 513 (1978).

The ADA defines a qualified individual with a disability as "an individual with a disability who, with or without...the removal of...communication...barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C § 12131; see also Duvall v. County of Kitsap, 260 F.3d 1124, 1136 (8th Cir. 2001); Randolph, 170 F.3d at 858.

### 1. Qualified Individual

The Defendant argues Voigt is not a qualified individual with a disability under the ADA. The Defendant argues Voigt's hearing loss is not significant enough to substantially limit his daily activities. Walking, hearing, and seeing a re major life activities and as such a hearing impairment is the type of disability which is covered by the ADA. See Toyota Motor Mfg, Kentucky Inc. v. Williams, 534 U.S. 184, 194-95 (2002)(Title I). The impairment must be substantial and not just minor inconvenience. Id. A severe hearing impairment has been found sufficient to make a person a "qualified individual" for purposes of Title II of the ADA. Duvall, 260 F.3d at 1136.

Voigt has submitted medical records and a letter from his doctor which demonstrate moderate hearing loss. He has been prescribed hearing aids. The Defendant points to the observations of the several State officials that spoke to Voigt and the record of the OAH hearing to support its argument. Voigt's submissions are sufficient to put the issue in dispute and satisfy the first element of a prima facie case of discrimination under Title II of the ADA.

### 2. Exclusion or Discrimination

The central question raised by the Defendant's motion is whether Voigt was excluded

from participation in his appeal and hearing before the OAH or was otherwise discriminated against.  Voigt did participate in the OAH hearing so it cannot be said he was excluded from the benefit or service entirely.  However, the access afforded Voigt must be "meaningful access." Randolph, 170 F.3d at 858.

The record before the Court does not contain any suggestion that Voigt was not able to fully participate in his hearing.  A transcript of that hearing was submitted in support of the Defendant's motion. (Document 34-2).  The Court has thoroughly reviewed it.  In a hearing which lasted 2 ½ hours Voigt only asked for two questions to be repeated.  Voigt does not point to any portion of this transcript to support his assertion that he was not able to fully participate.  The hearing was conducted in a small private room with the participants seated very close to one another.  Voigt participated in two pre-hearing conferences under similar conditions prior to making his request for accommodation and apparently did so with no difficulty.  At one point in the OAH hearing Voigt stated he understood perfectly what was said to him and that he had no further questions. (Document 34-2 at p. 55).  An entity need only provide such auxiliary aids as are necessary to afford a disabled individual opportunity to fully participate. Duvall, 260 F.3d at 1137.  Absent any evidence Voigt did not enjoy meaningful access or could not fully participate the Court concludes Voigt has failed to state a prima facie case of discrimination under Title II of the ADA.

In so holding the Court does not approve of the manner in which ALJ Wahl handled Voigt's request for auxiliary aids.  A simple inquiry could have prevented this entire situation.  ALJ Wahl's letter in response was a glaringly incorrect statement of the OAH's obligations under the ADA.  That Voigt was disgruntled by this response is understandable.  Fortunately for

9

the Defendant, Voigt was able to fully participate in the hearing.

## IV.     CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment is **GRANTED**.  Voigt's Motion to Dismiss the Amended Statement of Facts is **DENIED**.

**IT IS SO ORDERED.**

Dated this 7th day of May, 2007.

                                        /s/ *Patrick A. Conmy*
                                    Patrick A. Conmy, Senior District Judge
                                        United States District Court